The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
The Full Commission finds as facts and concludes as matters of law the following, which were agreed upon by the parties at the hearing before the Deputy Commissioner and in a Pre-trial Agreement filed with the Industrial Commission on October 14, 1994 as:
STIPULATIONS
1. At all times relevant to this claim the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all times relevant to this claim, an employer-employee relationship existed between the parties.
3. Plaintiff's alleged date of injury is May 16, 1990.
4. Alexsis, Inc. was the compensation carrier on the risk at that time.
5. Plaintiff's average weekly wage was $491.11.
* * * * * * * * * *
The Full Commission rejects the findings of fact of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a married male with a date of birth of September 22, 1951. He completed the ninth grade in high school and quit school in the tenth grade. Plaintiff has not pursued any formal education beyond ninth grade and possesses no special licenses.
2. As of May 16, 1990, plaintiff had worked for defendant for approximately eleven years as a serviceman installing and repairing washers and dryers. Prior to working for defendant, plaintiff worked as a serviceman for Little River LP Gas Company where he installed and repaired gas furnaces and stoves. Prior to that plaintiff repaired water well pumps for another company. Plaintiff has not held any other jobs for any significant period. All three of the above jobs required plaintiff to be able to stand, stoop, bend and lift, and otherwise have the ability to perform heavy physical labor.
3. On May 16, 1990 plaintiff sustained an injury by accident to his back while attempting to move a washer and dryer during the course of his employment with defendant. Since May 21, 1990, pursuant to a Full Commission Opinion and Award filed on July 21, 1992, plaintiff has received temporary total disability compensation benefits, and continues to receive said benefits.
4. Plaintiff was initially treated for his back injury by Dr. Michael Fajgenbaum on May 21, 1990. After being treated by Dr. Fajgenbaum, plaintiff received treatment for his back injury from Dr. Dennis E. Bullard, a neurosurgeon. Dr. Bullard had previously treated plaintiff in 1988 for a cervical disc problem. As a direct result of plaintiff's injury by accident Dr. Bullard performed partial hemilaminectomies at the L4-5 and L5-S1 levels, with a diskectomy at the L5-S1 level for a ruptured disc on June 4, 1990. Dr. Bullard performed repeat surgery at the same levels on September 26, 1994 due to recurrent disc problems.
5. By November 1994 plaintiff had reached maximum medical improvement. Dr. Bullard assigned a thirty percent (30%) permanent partial impairment rating to plaintiff's back as a result of the 1990 and 1994 surgeries, and ordered general restrictions of no frequent bending or lifting and no lifting of over twenty-five pounds. Dr. Bullard is treating plaintiff with Feldene, an anti-inflammatory medication; Valium, a muscle relaxer; and Lorcet, a narcotic pain reliever.
6. On November 28, 1994 plaintiff participated in a functional capacity evaluation upon Dr. Bullock's recommendation. This evaluation revealed that plaintiff was capable of performing sedentary/light work, but noted that his inability to tolerate extended periods of standing or sitting might compromise his ability to perform work in a structured setting. Plaintiff's ability to stand was rated in the low category and his ability to sit was rated in the below average category. Plaintiff's walking ability could not be measured because plaintiff was unable to walk on the treadmill at the minimum speed of 1.5 miles per hour. The evaluation concluded that plaintiff suffered from burning in his legs and the anterior lateral region of his thighs, and that he had limited trunk range of movement, limited lower extremity flexibility, and limited functional capabilities in sitting, standing, walking, lifting, climbing, squatting, carrying and grip strength.
7. Dr. Bullard opined that plaintiff had the ability to return to work in some capacity and therefore was not permanently and totally disabled. He noted, however, that plaintiff must work under restrictions and would have good days and bad days and may not be able to work a regular full-time work schedule. He also strongly suggested that plaintiff would need to participate in a vocational rehabilitation program in order to find employment. In addition, Dr. Bullard opined that plaintiff would be unable to return to any job that would require frequent bending, lifting, sitting, or heavy physical work.
8. Dr. Bullard's opinion as to plaintiff's ability to return to full-time work however, is specific to the restrictions placed on him due to his back condition only. He deferred any opinion as to plaintiff's total ability or inability to return to work due to causes other than his back condition to the medical providers and rehabilitation specialists working on those aspects of plaintiff's care.
9. As a result of his injury by accident and subsequent back surgeries, plaintiff has ongoing back pain and a constant burning sensation in his legs which limits his movement and his ability to bend, stoop, walk, stand, or sit for any length of time. In addition, the medicine plaintiff must take to treat his back and leg pain tends to make him dizzy and drowsy, and has caused gastrointestinal problems.
10. In November of 1993, plaintiff visited Dr. Morris A. Pollock, a gastroenterologist, with complaints of abdominal pain. Dr. Pollock had previously treated plaintiff in 1981 for gastritis and gallbladder disease, and in 1988 for anemia presumably caused by alcohol abuse.
11. Prior to 1993 plaintiff did not seek frequent treatment for gastrointestinal problems, nor is there evidence that plaintiff had significant pancreatic problems prior to that time. Since November of 1993 however, plaintiff has sought regular treatment for gastritis and pancreatitis, and was admitted to the hospital on two occasions for pain resulting from pancreatitis. Dr. Pollock was of the opinion that plaintiff's alcohol abuse, more likely than not, caused plaintiff's pancreatitis, which is a condition that does not resolve with treatment but can only be managed with continued medication and diet control. Dr. Pollock treated plaintiff eight or nine times between November 1993 and December 1994 for acute pancreatitis. Dr. Pollock's treatment has included prescriptions for Creon, a pancreatic enzyme replacement taken daily; Sandostatin, a hormone to be taken for pancreatitis flare-ups; and either Tagamet, Zantac and Prilosec, which are antacids prescribed to control gastric irritation.
12. According to Dr. Pollock, plaintiff's gastritis was more likely than not, significantly aggravated by the medications prescribed for treatment of his back condition and that the combination of medications plaintiff takes for his back condition and other conditions could have aggravated his pancreatitis condition.
13. Plaintiff would not be able to work during a pancreatitis attack due to the pain but plaintiff's gastrointestinal condition alone would not preclude him from working.
14. Plaintiff has also received treatment from Dr. Darron Joseph Molter, a family practitioner, since May of 1993. Dr. Molter is currently the sole doctor managing all of plaintiff's prescriptions which include Percocet, a narcotic pain reliever for his back pain; Prozac and Amitriptyline, anti-depressants; Diazepam, a sedative for muscle spasm and anxiety; as well as the medications previously mentioned for treatment of plaintiff's back, pancreatitis and gastrointestinal disorders.
15. It is Dr. Molter's opinion that although plaintiff is at maximum medical improvement from his back injury, he continues to suffer from intermittent and episodic severe low back pain which radiates into both legs, neck pain, recurrent pancreatitis, and gastrointestinal symptoms related to all the medicine he takes. Dr. Molter is of the opinion that plaintiff is more likely than not, permanently and totally disabled from working due to the combination of his illnesses. He bases his opinion on the fact that plaintiff would be unable to obtain and keep gainful employment because he could not do the sitting, standing, walking or lifting required to obtain a position suited to his skills. He also believes that due to severe intermittent abdominal and back pain, plaintiff's regular attendance at work would probably be limited. In addition, Dr. Molter opined that plaintiff's gastrointestinal and pancreatic symptoms were likely to worsen over time. Although Dr. Molter testified that plaintiff was permanently and totally disabled, Dr. Molter agrees with the restrictions placed upon plaintiff by the functional capacity evaluation and by Dr. Bullard.
16. Plaintiff's gastritis condition was either caused or significantly aggravated by medication taken for his compensable back injury. Plaintiff's pancreatitis condition was significantly aggravated by medication taken for his compensable back injury.
17. Given plaintiff's physical restrictions, his level of pain, his age, limited education, and prior work experience, plaintiff is unable to perform the types of jobs for which he is trained or any other jobs in the competitive marketplace. Plaintiff's usual and customary vocation is as a repair serviceman. All of plaintiff's previous jobs required heavy manual labor including the ability to stand, stoop, bend and lift as part of his duties. Because of his physical restrictions caused by his back injury and resulting gastrointestinal problem, plaintiff can no longer perform his customary occupation. As a result of his compensable injury plaintiff is incapable of earning the same or greater wages in his former employment or in any other employment.
18. Defendant has not offered plaintiff vocational assistance nor has defendant shown that there are jobs available in the competitive marketplace that plaintiff could get.
19. Considering plaintiff's age, limited education, past work experience, the physical limitations and pain resulting from his compensable back injury, his resulting gastritis and the material aggravation of his pancreatitis, plaintiff is permanently and totally disabled.
20. Plaintiff average weekly wage of $491.11 yields a compensation rate of $327.42.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On May 16, 1990 plaintiff sustained an injury to his back by accident or sustained a traumatic incident arising out of and in the course of his employment with defendant. This claim was determined to be compensable in a prior Opinion and Award of the Industrial Commission. As a result of this injury, plaintiff underwent two back surgeries, and retains a thirty percent (30%) permanent partial impairment to his back. As a result of his injury by accident and resulting surgeries, plaintiff has ongoing back and leg pain, limited movement and limited abilities to bend, stoop, walk, stand, or sit for any length of time. N.C. Gen. Stat. § 97(6).
2. As a result of the medications prescribed for treatment of plaintiff's compensable injury to his back plaintiff has developed gastrointestinal problems. N.C. Gen. Stat. § 97-2(6).
3. As a result of the medications prescribed for treatment of plaintiff's compensable injury to his back plaintiff's pancreatitis condition has been significantly aggravated. N.C. Gen. Stat. § 97-2(6).
4. Considering plaintiff's physical limitations and level of pain caused by his compensable back injury, his resulting surgeries, his gastritis and pancreatitis as well as his age, limited education, prior work experience and training which is limited to heavy manual labor, defendant's failure to provide vocational assistance and to prove that there are jobs plaintiff can do and get, plaintiff is permanently and totally disabled.
5. Plaintiff is entitled to compensation for permanent and total disability and such medical compensation during his lifetime as is reasonably required to effect a cure, provide relief and/or would tend to lessen his disability. N.C. Gen. Stat. §§ 97-29; 97-25.
6. Plaintiff is entitled to have defendant provide all medical treatment arising from this injury by accident. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendant shall pay to plaintiff compensation for permanent and total disability at the rate of $327.42 per week from the date of injury (if not previously paid) through the date of hearing on October 24, 1994 and thereafter continuing until further Order of the Industrial Commission. Defendant shall receive a credit for all compensation previously paid.
2. Defendant shall pay all medical expenses arising from plaintiff compensable injury, including those related to gastritis and the aggravation of his pancreatitis, when bills for same have been approved according to procedures adopted by the Commission.
3. Plaintiff's attorney is awarded an attorney's fee of 25% of the compensation due plaintiff pursuant to this Opinion and Award. Every fourth compensation check due plaintiff shall be paid directly to plaintiff's attorney.
4. Defendant shall pay the costs due this Commission.
 S/ _____________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ COY M. VANCE COMMISSIONER
BSB:md